RICHARD J. CRABB, ADM'R D. B. N.
OF FRANCES H. HARRIS AND OTHERS
VS.
SAMUEL MOALE AND OTHERS.

DECEMBER TERM, 1846.

[PRIORITY OF PAYMENT OF LEGACY AND ANNUITY.]

A TESTATOR, by his will executed in 1786, gave to his wife a legacy of £2250, and an annuity of "£500 during her natural life, to be secured to her out of the rents of his estate," and devised to his brother the residue of his estate, "after the above will is complied with." The legacy being unpaid and the annuity in arrear, a decree was passed in 1790, charging the rents of all the lands of the testator, with the payment of the annuity due and to become due, *in the first place*, and *after said payment*, declaring the reversion chargeable with the payment of the legacy. The property was subsequently sold, and the proceeds proved insufficient to pay the arrears of the annuity. HELD—

That both the legacy and annuity are by the decree of 1790, treated as a charge upon the real estate of the testator in the hands of his residuary devisee, and the same decree settles the question of priority of payment between the annuity and legacy by declaring that the former must *be first paid*.

[The facts of this case are stated in the Chancellor's opinion.]

THE CHANCELLOR:

This case comes before the court upon exceptions to the report and accounts of the Auditor filed on the 30th of October last, and having been argued by the counsel of the parties, it becomes the duty of the court to decide upon the questions presented for its consideration.

In the will of the late Richard Moale, of Baltimore county, executed and proved in February, 1786, are the following provisions: "I will and direct, give and bequeath, unto my dear wife, Frances Halton Moale, £2250 specie, to be paid in English guineas, at 35 shillings each." "I give and bequeath unto my dear wife, Frances Halton Moale, £500 in English guineas, at 35 shillings each, yearly, during her natural life, to be secured to her, my dear wife, Frances H. Moale, out of, and from the rents arising from my estate, but with this reserve, in tender care and affectionate regard to my dear wife, I will and direct

that she, my dear wife, Frances H. Moale, nor no person or persons for her, shall, by any means or ways whatever, sell, assign, or transfer, or by any means or ways, whatever, divest herself, or be divested of the said yearly sum of £500 aforesaid, or any part or parcel thereof." And then, after a provision that said sum of £500 should be paid to his wife, and to her alone, and a bequest to her of his carriage and horses, the will proceeds, "and I here declare, that this and the above legacies are given to 'my dear wife instead of her right of dower." And further, "I will and direct, that after my just debts are paid, and the legacies herein given and bequeathed to my dear wife, Frances Halton Moale, be first complied with." There is then a residuary clause, giving to John Moale, the brother of the testator, the rest and residue of his property, "after the above or foregoing will is complied with."

In a previous part of the will, the testator designated particular portions of his property, real and personal, which he directed to be sold for the purpose of defraying the expenses of his funeral, paying his debts and discharging the legacies thereinafter mentioned, and he constituted his said wife, his brother John Moale, and Jeremiah T. Chase joint executors and executrix of his will.

Afterwards, in the month of January, in the year 1788, Frances H. Moale, the widow of the testator, intermarried with one David Harris, but prior to the marriage, she, and the said Harris, conveyed to one John McLure, the aforesaid legacy and annuity, in trust, for her sole and separate use, and upon the footing of this conveyance, McLure, the trustee, in February, 1789, filed his bill in the Court of Chancery, against John Moale and Jeremiah T. Chase, the acting executors of the testator, Richard Moale, alleging that his whole real and personal estate, after the payment of debts, was chargeable with the legacy and annuity, and praying that a decree might pass for the sale of so much of the real estate as may be necessary after the application of the personal estate for the payment of the balance due on the legacy, with interest, and for the punctual payment, yearly, of the said annuity, to the said Frances during her life.

Upon this bill, after the answers had been filed thereto, and various proceedings had, the Chancellor, on the 13th of May, 1790, passed his decree, by which it was declared, that after the payment of the debts of the testator the annual rents of all the lands held by the testator (of which a schedule was annexed) and also all the annual rents of the lands leased or to be leased by the defendant, John Moale, should be chargeable in his hands, and in the hands of his heirs and assigns, *in the first place*, with the payment of the annual sum of £500, current money, from the 22d of February, 1786, the day of the death of the testator, and during the life of the said Frances H. Moale, to John McLure, the complainant, as her trustee, in trust for her, *and in the next place*, all the said annual rents, as they arise, shall be, and are hereby declared to be, chargeable in the hands of the said John Moale, as devisee and heir aforesaid, and in the hands of his heirs, &c., with the payment to the said John McLure and his heirs, in trust, for the said Frances H. Harris, if any arrearages of the said annual sum of £500 now accrued, or that may hereafter accrue, with interest on such arrearages as they become due, until the same, with interest, are paid. And in case the said arrearages shall not be paid during the life of the said Frances H. Harris, that in such case, the said arrearages with interest as aforesaid, shall be paid to the said John McLure and his heirs, in trust, for the use of the representatives of the said Frances after her death. And *after payment* of said arrearages and interest, the reversion in fee, devised to the said John Moale, shall be, and is thereby declared to be, chargeable in the hands of the said John Moale, and his heirs, &c., with the payment of the legacy in the said will, to the said Frances, the wife of the testator, of £2250, current money, with interest thereon from one year after the death of the testator, to the said John McLure, and his heirs, in trust, for the use of the representatives of the said Frances H. Harris, which said legacy, with interest as aforesaid, shall be first paid, &c.

It appears from the proceedings, that the £500 annuity was not regularly paid, but large arrears were permitted to accumu-

late, and that a considerable amount of the legacy of £2250 also remained unpaid. This seems to have been the condition of things when David Harris, the second husband of Francis H. Moale, died, in November, 1809, and having by his will appointed Joseph Sterrett and Molly Sterrett his executors, they, and the said Frances H., on the 23d of April, 1811, entered into an agreement for the purpose of settling the several points of disagreement between them.

This agreement recites, that the said Frances had renounced the will of her husband, the said David Harris, and elected to take her dower in his real, and her third of his personal estate. That she claimed in her own right that portion of the legacy of £2250, which remained unpaid, with interest, and the arrearages of the £500 annuity, with interest, and also the growing annuity. And that the executors of the said David, also claimed the same in virtue of his will. The agreement then provides that for the purpose of settling and adjusting the claims of the respective parties, and to avoid litigation, that the executors shall pay and deliver to the said Frances, certain sums of money and property bequeathed to her by the said David Harris ; that the said Frances, her executor, &c., shall have and receive one-third of whatever might be thereafter received by the said executors, of the legacy of £2250, and one-third part of whatever might be recovered of the arrears of the said annuity of £500, which were due at the death of the said David Harris. In consideration thereof, the said Frances agreed to release to the said Joseph and Molly Sterrett, her dower in the real and personal estate of her said husband, David Harris, and also her right, title and claim to the said legacy of £2250, except such part thereof as is reserved to her by these presents, and also her right, title and claim to the said annuity of £500, and the arrears thereof, except only the part which is reserved to her by these presents. The agreement then provides that the claim for the balance of the said legacy, and for the arrears of the annuity due from the representatives of Richard Moale or John Moale, shall be under the exclusive control and management of the said Joseph and Molly Sterrett, who shall have

power to compromise and adjust the same as to them may seem advantageous, without the control or interference of the said Frances H. Harris, it being expressly understood, that she shall only be entitled to one clear third of whatever may be recovered by them of the said legacy or annuity, by suit or compromise, after deducting expenses, &c.

On the 22d of December, 1817, the Auditor, in conformity with an agreement of the parties, made a report to the Chancellor, ascertaining from the evidence then before him, the amount at that time due of the annuity for arrearages and interest, and also the amount of the legacy remaining unpaid, but this report was, by the Chancellor's order of March term, 1818, returned to the Auditor for a further report. Prior to this period, to wit, in June, 1809, a bill was filed by David Harris and Frances H. Harris, his wife, against John Moale and others, the purport and object of which, and of the bill of review by his and her executors, filed in 1815, and of an amended bill filed by them, is stated in an order passed by the Chancellor, on the 20th of September, 1820, in which the kind of decree to which he thought the complainants were at that time entitled, is pointed out. The Chancellor, in this order, expresses the opinion, that the residue of the estate of Richard Moale, devised to John Moale by Richard, gave the devisee no beneficial interest until the will was complied with, whether the rents arising from the estate remained at their first value or not, and that a decree for the payment of the annuity or arrearages of the legacy would not take any thing from the representatives of the said John to which they were entitled, and he affirms that such has been adjudged to be the effect of the will by the decree upon McLure's bill, passed in 1790. The Chancellor then, after describing the nature of the decree to which the complainants were at that time entitled, reserved for future consideration, the question of the propriety of selling the reversion, which had been somewhat pressed in the argument before him.

On the 23d of December, 1820, the Auditor, on the application of the administrator of Frances H. Harris, stated and re-

ported an account, showing the proportions of the annuity due him as such administrator, and the proportion due the executors of David Harris for arrearages down to the period of the death of the said Harris, and also the amount due the said administrator of the wife for the arrearages which accrued from the period of the death of David Harris, on the 22d of November, 1817, which report was, by the decree of the Chancellor of the 11th of January, 1821, ratified and confirmed. The amount of the arrearages, with interest thereon, which accrued in the interval between the deaths of David Harris and his wife Frances, is stated in this account to be $3990 24.

Several other accounts were subsequently reported by the Auditor, all of which were based upon the account of the 23d of December, 1820, and all of these received the sanction of the court.

It may be proper to state, that by the agreement of the 23d of April, 1811, between the executors of David Harris and Frances H. Harris, it was stipulated, that the latter should have the ground rents, which had or might accrue on certain lots or parcels of ground leased by Richard and John Moale, from the death of the said David Harris to her own death, amounting to the annual sum of £449 8s. 6d., and that the difference between that sum and the annuity of £500, being £50 11s. 6d., should be paid to Frances H. Harris during her life, by the said executors of her husband David Harris, thus securing to her the whole of the annuity from the death of her husband so long as she should live.

Such was the condition of this case on the 13th of September, 1839, when a bill of revivor was filed by the proper representatives of Frances H. Harris, and of David Harris and others, against the proper parties, praying, among other things, that the reversion in the estate charged with the annuity and legacy might be sold; that the claims of the several complainants might be ascertained and established, and for general relief. And the Auditor having made reports ascertaining the sums due to the complainants, respectively, the Chancellor, on the 31st of January, 1845, ratified and confirmed the reports, and

passed a decree for a sale of the property, appointing a trustee for that purpose, with directions to sell the same, and to bring the proceeds into court for distribution under its direction.

This has been done, and the Auditor has reported two accounts, apportioning the proceeds of the sales between the representatives of Frances H. Harris, the wife, and David Harris, the husband.

In the account marked C., the proceeds of the sales are applied in proper proportions to the payment of the claims of these parties, on account of the arrears of the annuity, excluding altogether any claim founded upon the legacy of £2250 for the reason stated in the report.

In the other account marked D., the Auditor has included the legacy and treated it and the arrears of the annuity as constituting one claim, and standing on the same footing.

To both these accounts exceptions have been filed by the representatives of David Harris, and these exceptions and other questions connected with the final disposition of the case, have been argued by the counsel for the respective parties.

The Chancellor does not deem it at all proper or necessary to express any opinion with regard to the question whether, by the will of Richard Moale, the legacy of £2250 was with the annuity of £500 given to his wife, a charge upon the real estate of the testator in the lands of the residuary devisee, John Moale, or those claiming under him.

That question he considers to have been settled in the affirmative, by the decree of the 13th of May, 1790, by which the rents of all the lands are charged with the payment of the annuity due, and to become due, *in the first place*, and *after the said payment*, the reversion is declared to be chargeable with the payment of the legacy. The same view was taken by the court in 1820, when the order of the 20th of September of that year was passed, though for reasons, which are not very apparent, the court, at that time, forbore passing a decree for the sale of the property to pay the charges which it declared to exist. Neither does the Chancellor think it incumbent upon him to look into the grounds of the decree of January, 1845, under

which the property has been sold, unless such examination would reflect some light upon the only question now to be decided, which relates to the distribution of the proceeds of the sales, and he does not think that any such light can be borrowed from that decree, or that the late Chancellor, in passing it, meant in any way to contrast, or express an opinion upon the relative claims of the parties. He meant to decide, and he did decide, that the property was liable to be sold for the payment of these claims, but in what *order* they were to be paid, does not appear to have been considered by him.

Looking to the will of Richard Moale, there can be no doubt that he intended that his wife should, in any event, enjoy both the legacy and the annuity, the former within the usual period after his death, and the latter from year to year during her life, and that he supposed he had provided beyond contingency for the regular and punctual payment of both. There is nothing, therefore, in the will which very clearly indicates the order in which these claims should be paid, or rather which shall be preferred in case there should not be enough to pay both, and perhaps if confined to the will, the case would not, by any means, be free from difficulty.

The first proceeding in the case which relates to the order in which these claims are to be paid, or a preference given to one over the other, is the decree of the 17th of May, 1796, which declares in terms that the annual rents of all the property shall, *in the first place*, be charged with the payment of the annual sum of £500, and, *in the next place*, with the arrearages of said annuity, with the interest thereon, and *afterwards*, that the reversion shall be chargeable with the payment of the legacy of £2250, with the interest thereon.

This decree, therefore, having settled the question of priority between the annuity and the legacy, and having declared that the former must be FIRST *paid*, must decide the present controversy, unless there is something in the subsequent proceedings, or in the acts or agreements of the parties which can have the effect of modifying or controlling that decree.

David Harris having died on the 16th of November, 1809, his

executors, and Frances H. Harris, his widow, entered into the agreement of the 23d of April, 1811, the stipulations of which have been already adverted to. It is perfectly obvious, that this agreement did not propose to change the order in which the annuity and legacy were to be paid, or to disturb the priority of the former over the latter, as established by the decree of 1796. Its whole object, upon this subject, was to fix and adjust the proportions of these claims which the representatives of the husband, and the wife, should receive, which proportions were, that the wife should receive one-third of whatever might be recovered of the legacy, and one-third of whatever might be recovered of the arrears of the annuity which were due at the period of the death of David Harris, the residue of the legacy and of such arrears of the annuity being released to the executors of the said David Harris. This agreement then, though it fixes the proportions in which these claims shall be divided between the husband and wife, does not profess, in any way, to alter the order of payment, or to take from the annuity the preference and priority over the legacy which was given it by the decree of 1796. But the annuity of £500, did not stop with the death of David Harris, it was to continue until the death of Frances H. Harris, which took place in November, 1817, and the agreement of April, 1811, provides that she should have for her life the ground rents on certain lots and parcels of land leased by Richard and John Moale, amounting to a certain annual sum, the difference between which, and the annuity of £500, was to be paid to her by the executors of her husband David Harris.

The arrangement, then, between Mrs. Harris and the executors of her husband was this : That she was to receive one-third of the legacy of £2250, one-third of the annuity which accrued during the lifetime of her husband, and the whole of the annuity which might accrue after his death, the said executors being entitled to receive the remaining two-thirds of the legacy, and of the annuity which accrued during the life of the husband, but no part of the annuity which accrued subsequently to his death.

But the proceeds of the property now to be distributed, are

insufficient to pay the arrearages due upon the annuity, and consequently it follows, if these proceeds are to be applied to its payment in the first instance, nothing will be left applicable to the legacy.

This is the conclusion to which I have arrived, after a careful consideration of the voluminous proceedings in this case, and as the account C., filed on the 30th of October last, is stated according to my views of the case, as herein expressed, I shall ratify that account, in which, it seems to me, I shall be acting in accordance with what has been repeatedly done by those who have gone before me, a number of accounts having been so stated by the proper officer and ratified by my predecessors in office.